**LORAL FAIRCHILD CORP., Plaintiff,**

v.

**MATSUSHITA ELECTRIC INDUSTRIAL COMPANY, LTD., et al., Defendants.**

**LORAL FAIRCHILD CORP., Plaintiff,**

v.

**VICTOR COMPANY OF JAPAN, LTD., et al., Defendants.**

Nos. 91 CV 5056 (SJ), 92 CV 0128 (SJ).

United States District Court, E.D. New York.

Jan. 7, 1994.

William A. Streff, Jr., Kirkland & Ellis, Chicago, IL, Lawrence J. Gotts, Kirkland & Ellis, Washington, DC, for defendant Hitachi.

Douglas B. Henderson, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, for defendants Goldstar and Nikon.

Morton Amster, Amster, Rothstein & Ebenstein, New York City, for Matsushita.

Francis E. Morris, Pennie & Edmonds, New York City, for defendant Mitsubishi.

Richard Codding, Spensley, Horn, Jubas & Lubitz, Los Angeles, CA, for defendant Murata.

Vernon M. Winters, Cooley Goodward Castro Huddleson & Tatum, San Francisco, CA, for defendants National Semiconductor Corp. and Fairchild Semiconductor Corp.

John M. Calimafde, Hopgood, Calimafde, Kalil, Blaustein & Jodlowe, New York City, for defendant NEC.

Matthew D. Powers, Weil, Gotshal & Manges, Menlo Park, CA, for defendant Oki.

Karen L. Hagberg, Morrison & Foerster, New York City, for defendant Ricoh.

Jack L. Lahr, Foley & Lardner, Washington, DC, for defendant Samsung.

John B. Pegram, Davis, Hoxie, Faithfull & Hapgood, New York City, for defendant Sanyo.

Barry W. Graham, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, for defendant Sony.

Arthur I. Neustadt, Oblon, Fisher, Spivak, McClelland, Maier & Neustadt, P.C., Arlington, VA, for defendant Toshiba.

James H. Wallace, Wiley, Rein & Fielding, Washington, DC, Edward M. Spiro, Kostelantz, Ritholz, Tigue & Fink, New York City, for plaintiff Loral Fairchild.

Joseph M. Fitzpatrick, Fitzpatrick, Cella, Harper & Scinto, New York City, for defendant Canon U.S.A.

Francis J. Hone, Brumbaugh, Graves, Donahue & Raymond, New York City, for defendant Fuji.

## ORDER

JOHNSON, District Judge.

### INTRODUCTION

Plaintiff Loral Fairchild Corporation ("Loral") brought this patent infringement suit on September 12, 1991 (91 CV 5056) and on June 22, 1992 brought additional claims against another ten defendants (92 CV 0128). In March 1993 Loral sought to amend the complaint to include claims concerning patent

ownership against National Semiconductor Corporation ("NSC") and Fairchild Semiconductor Corporation ("FSC") pursuant to 28 U.S.C. § 1367. FSC and NSC have now moved to dismiss the claims against them for lack of subject matter jurisdiction, or in the alternative, to stay this litigation pending the outcome of litigation regarding ownership of the patents in California. Loral opposes this motion on the grounds that supplemental jurisdiction is proper over both NSC and FSC and that only this litigation is capable of binding all parties.[1]

## BACKGROUND

This case involves thirty-eight defendants—thirty-six for infringement of two patents[2] (the "infringing defendants") while two, NSC and FSC, are involved in an ownership dispute over the two patents at issue (the "ownership defendants"). Extensive discovery has been conducted and the parties have already filed over thirty motions for summary judgment on a variety of issues. These motions have been stayed pending the resolution of this motion regarding supplemental jurisdiction.

This litigation centers around two patents, U.S. Patent No. 3, 931, 674 ("'674 patent") and U.S. Patent No. 3, 896, 485 ("'485 patent"), which relate to charge-coupled devices ("CCDs"). CCDs are a type of semiconductor chip used in the light-sensing components of videocameras, facsimile machines, and various other devices.

The '674 patent is entitled "Self–Aligned CCD Element Including Two Levels of Electrodes and Method of Manufacture Therefor" which relates to the fabrication process of a self-aligned, two-phase, two-poly, charge-coupled device structure. Dr. Gilbert F. Amelio was the inventor of this process and applied

for a patent on February 7, 1974 at which time he also assigned his entire right, title and interest to the patent to his then-employer, Fairchild Camera and Instrument Corporation ("FCIC"). The patent was issued on January 13, 1976 to FCIC and has remained in FCIC's name throughout its validity.[3]

The '485 patent is entitled "Charge–Coupled Device with Overflow Protection" which relates to "anti-blooming" and exposure control structures and methods in charge-coupled devices. Dr. James M. Early invented this device and applied for a patent on November 30, 1973 at which time he assigned his entire right, title and interest to his then-employer, FCIC. The patent was issued on July 22, 1975 to FCIC and has remained in FCIC's name throughout its validity.[4]

On October 22, 1985, FCIC changed its name to Fairchild Semiconductor Corporation (FSC) which was duly filed with the Secretary of State of Delaware, the state of FCIC's incorporation. At that time, FSC was a division of Schlumberger Technology Corporation which was in turn a subsidiary of Schlumberger, Ltd. (collectively, "Schlumberger"). In 1987, Schlumberger entered into negotiations with NSC to forge an agreement under which NSC would purchase all of the issued and outstanding stock of FSC.

This agreement, dated August 31, 1987 (the "Stock Purchase Agreement") had a closing date of October 8, 1987 and purported to transfer all of FSC's assets other than the "Merchant Semiconductor Business" out of FSC. Included within the closing documents were a series of agreements that concerned various pieces of intellectual property. It is these agreements that are the subject of the

1. Defendants Sanyo Electric Co., Ltd. and Sanyo Fisher (USA) Corp. have also filed a brief opposing NSC's and FSC's motion. Defendants Sony Corporation and Sony Corporation of America have filed a letter in favor of a dismissal or stay for failure to join an indispensable party under Fed.R.Civ.P. 19.

2. At one time, there were as many as 38 defendants sued by Loral for infringement of the patents allegedly owned by Loral but two have reached a settlement agreement.

3. The '674 patent expired on January 13, 1993, thus there are no allegations of ongoing infringement. Any damages are alleged to have occurred prior to the patent's expiration.

4. The '485 patent expired on July 22, 1992, thus there are no allegations of ongoing infringement. Any damages are alleged to have occurred prior to the patent's expiration.

ownership dispute between Plaintiff Loral and Defendants NSC and FSC.

Loral alleges that in an agreement dated August 21, 1987 (the "August 21 agreement"), FSC assigned all right, title, and interest to certain defined CCD Technical Rights to Fairchild Weston ("Weston"), a division of Schlumberger. This agreement allegedly included the '674 and '485 patents listed on Schedule A to the August 21 agreement. FSC alleges that the copy of the agreement which it signed did not contain Schedule A; thus, it is their contention that the assignment of the two patents did not occur and that only a non-exclusive license was transferred. Thus, NSC acquired ownership of the patents through the merger.

Loral contends that a draft of the August 21 agreement including Schedule A was circulated to FSC on August 7, 1987 and was signed on September 3, 1987 by FSC and by Weston on the 24th. Loral further alleges that the August 21 agreement contemplated an assignment agreement which was duly executed by FSC and Weston on September 14, 1987 (the "September 14 agreement") and that it included Schedule A. Thus, Loral contends that the assignment was valid and that FSC and NSC knew about Schedule A and its relation to the assignment.

In contrast, FSC argues that the officer signing the September 14 agreement was without authority to do so and that the agreement lacked proper consideration.[5] NSC posits that FSC did not have the right to transfer ownership at that time nor did the officer have authority and that Loral knew this. NSC contends that Loral only succeeded to Weston's interest as a licensee. Indeed, according to NSC and FSC, the fact that no transfer of ownership was reflected at the patent office is evidence that Loral

knew that it had not acquired full ownership of the patents.[6]

NSC and FSC have further argued that an assignment of the patents from FSC to Schlumberger on October 7, 1987 (the "October 7 agreement") was invalid because the purported officers of FSC were acting at the direction of Schlumberger and were under Schlumberger's control when they signed the September 14 and October 7 agreements. This is the basis of the lawsuit in California where plaintiffs NSC and FSC claim that defendant Schlumberger fraudulently signed the agreement with NSC transferring ownership of FSC's assets while simultaneously secretly transferring ownership from FSC to Schlumberger entities.

Loral, relying on the validity of the August 21 agreement, claims that it obtained ownership of the patents when Weston, on June 27, 1989, allegedly assigned the patents to Loral Computer Systems Corporation which changed its name to Loral Fairchild Corporation in July of the same year. It is this entity, Loral, which now seeks a declaratory judgment that it owns the two patents and seeks damages from the infringing defendants for alleged patent infringement.

Loral, believing that it owned the '674 and '485 patents, initiated this suit on September 12, 1991 against twenty-eight defendants and subsequently added ten other defendants. The suit was first brought in the Eastern District of Virginia and was subsequently removed to this court. Discovery was undertaken and in early 1992, some of the infringing defendants asserted that they were licensed to use the technology of the patents at issue.[7] Consequently, discovery was begun on that issue and NSC was subpoenaed to produce any documents pertaining to the licensing of the two patents. At that time, NSC stated that it was extremely

---

5. The comptroller of FSC signed the agreement which purported to assign FSC's right to the '674 and '485 patents to Weston for one dollar.

6. Loral has since taken steps to remedy this situation by filing the documents it contends are proof of ownership with the patent office.

7. Not all of the infringing defendants have the same posture in this litigation as there are three

distinct types of infringers. One group are manufacturers and sellers of CCDs who then ship and assemble products using CCDs. A second group does not manufacture CCDs but does ship and assemble products containing CCDs. Finally, a third group imports and sells finished products containing CCDs but neither manufactures nor assembles products.

reluctant to undertake a search of its records for any documents that might shed light on the matter because it had over 70,000 boxes of records and it did not own the patents in question. These declarations were made by NSC officials and counsel in affidavits filed with California District Court Magistrate Judge Hamilton. In a June 30, 1992 Order, Magistrate Judge Hamilton stated that Loral owned the patents; nevertheless, she directed NSC to produce any licensing agreements and supportive documents. Discovery as to liability also continued among the thirty-six infringing defendants and Loral. During this time, settlement negotiations were ongoing among several parties, and indeed, settlement was reached with two defendants.

On February 16, 1993, NSC and FSC filed suit in California state court against Loral asserting ownership of the '674 and '485 patents and against Schlumberger for breach of contract and fraud concerning the 1987 Stock Purchase Agreement.[8] Soon thereafter, several of the infringing defendants moved this court to stay the federal action while the state action went forward. Magistrate Judge Zachary Carter declined to do so but instructed Loral to join NSC and FSC pursuant to Fed.R.Civ.P. 19 as indispensable parties. An amended complaint was filed by Loral in March joining NSC and FSC stating that jurisdiction was proper under 28 U.S.C. § 1367 which permits this court to exercise supplemental jurisdiction over related state claims. NSC and FSC have contested this jurisdiction and have moved to have this action dismissed or stayed in light of the California action.

Loral asserts that the federal litigation must go forward and is the only forum that can adjudicate all claims. Loral has also alleged that the California action was merely begun to delay this litigation. While the circumstances surrounding NSC's and FSC's eleventh-hour entry into this matter may appear at first glance suspicious, mere coincidence does not prove the matter. NSC and FSC contend that there is evidence to sustain their allegations and that the action is

properly decided by the state court while this court abstains. We must examine the issues and postures of each litigation and determine the course that is most judicially sound.

## DISCUSSION

### A. Supplemental Jurisdiction

■ Under 28 U.S.C. § 1367 this court is provided supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Section 1367 is a codification of *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) where the United States Supreme Court held that the exercise of supplemental jurisdiction is proper when there is subject matter jurisdiction over the federal action and the claims are such that one "would ordinarily be expected to try them all in one judicial proceeding." Whether or not to exercise this jurisdiction is solely a matter of the court's discretion after determining the extent to which state issues dominate in terms of proof, issues, and remedy and the extent to which the federal and state claims are intertwined. *Id.*

■ Loral argues that this court should exercise supplemental jurisdiction over the claims against NSC and FSC because ownership of a patent is a threshold issue inherent in the infringement claims. Loral contends that this court must hear all of the claims that relate to the patents and that this relation of the claims satisfies the "relatedness" requirement of 28 U.S.C. § 1367.

In contrast, NSC and FSC claim that the ownership issue does not derive from a common nucleus of operative fact with the infringement claims and indeed involves different issues and proof. They contend that the "relatedness" requirement is not met where the evidence relevant to the infringement disputes is entirely different from that relevant to the ownership dispute. Under this

---

8. The California action also includes a claim for declaratory relief against Loral regarding seven other patents; a breach of covenant of good faith and fair dealing against Schlumberger. None of the infringing defendants were named in the California state action.

theory, the claims are not supplemental but are entirely different.

While it is true that the issues of ownership and infringement are unrelated in terms of the legal issues and matters of proof, they are yet inextricably intertwined in that proof of one is necessary for action on the other. *See Refac Int'l Ltd. v. Mastercard Int'l,* 758 F.Supp. 152, 155 (S.D.N.Y.1991) ("Status as an assignee or patentee is a crucial prerequisite to bringing suit on infringement."). Thus, it would not be improper for this court to exercise its jurisdiction over these defendants; however, this jurisdiction is a doctrine of discretion and although rare, to decline such discretion is not out of the question.

### B. Abstention

■ NSC and FSC argue that even if this court finds supplemental jurisdiction, it should abstain from exercising it by staying those claims until the California action is resolved. Refusal of a federal court to exercise its jurisdiction by either dismissing the claims or staying the action in favor of another court is a rare occurrence and is only done in limited circumstances that "would clearly serve an important countervailing interest." *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). Such action by a federal court is only available in limited, narrowly circumscribed instances.

■ Abstention is appropriate where a federal constitutional issue might be avoided by a state court decision, *Id.; Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); where difficult questions of state law are presented that would have substantial impact on important public policy, *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); or where federal jurisdiction has been invoked to restrain state criminal proceedings. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). This case does not fall into any of these categories; however, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). Present in such cases are "considerations of '[w]ise judicial administration giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). In *Colorado River,* the Supreme Court set forth particular circumstances which may weigh in favor of a stay each of which "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983) (adding two additional factors to those put forth in *Colorado River* ).[9]

### 1. Order of Jurisdiction

■ If a court has already devoted considerable time, energy, and resources to understanding the issues, it is usually the best course to allow that court to proceed with the litigation rather than allow a different court to step in and reduplicate the efforts. Typically, this factor is determined in a rather straightforward manner by looking at the work expended by each court on the matters before it and the progress made in each action.

In this litigation, the federal courts obtained jurisdiction over the entire litigation long before the California court; the initial lawsuit was filed in federal court in Virginia on September 12, 1991 whereas the state action began on February 16, 1992. However, the ownership portion of the federal litigation was begun only after the infringing defendants in the federal action moved to stay this action because the state action had begun. Loral argues that the fact that the federal litigation was begun first is significant and that extensive discovery on the ownership issue has been undertaken, this court should retain jurisdiction. NSC and

---

9. "[A]ssumption by either court of jurisdiction over any res or property" is not a factor here.

*Moses H. Cone,* 460 U.S. at 19, 103 S.Ct. at 938.

FSC contend that what is critical is the ownership phase of the litigation which was first obtained by the state court. The ownership defendants argue that the discovery undertaken at the federal level has little bearing on the ownership dispute and that the state court is at the same stage or further along than the federal court.[10] They argue that this factor weighs in their favor or is at least neutral. We are inclined to agree.

Although the federal action was filed a year and a half prior to the state action, it is the ownership dispute that is most relevant. As to ownership, it would appear that relatively little has been done in this court that would shed light on the circumstances through which NSC and FSC claim they retained ownership of the patents while discovery has proceeded in the state court. Moreover, when combined with the fact that this court has not obtained jurisdiction over Schlumberger, arguably an indispensable party to the issue of ownership, and that Loral has been actively litigating in the state forum, the order of filing appears to be at minimum, a neutral factor.

### 2. Convenience of the Forum

Loral contends that New York is by far the more convenient forum in that New York law applies, certain witnesses are available here, and travel is easier to New York. NSC and FSC respond that New York is not convenient to them nor would it be convenient to subject the infringing defendants to the process of discovery that must take place on the ownership issue. This court finds that this factor is neutral as to both parties in that travel has made both New York and San Jose easily accessible by air travel, each party appears to have familiarity with each area, and it has not been shown that all witnesses are in New York as opposed to California. By contrast, this court's hearing of the ownership issue would needlessly mire the infringing defendants in litigation over which they have little to contribute; certainly, these defendants have an enormous stake in the

outcome of the ownership issue but it is unnecessary to involve them in the issue. Indeed, if NSC and FSC prevail on their claims, the infringing defendants would no longer be liable to Loral.

### 3. Protection of the Rights of the Federal Plaintiff

Loral contends that this court will better serve its interests because discovery has already been undertaken and certain procedural devices are available here to speed up matters. NSC and FSC argue that California can adequately protect Loral's rights and they cite Loral's continued use of the California courts as examples of this. Defendants further contend that California has certain procedural devices available that will enable Loral to obtain speedy resolution. Given that Loral has been actively litigating in California[11] and that California state courts do have procedural devices to speed litigation, this court believes this factor to be neutral.

### 4. Rule of Decision

When state law will apply to the bulk of the claims this factor will weigh in favor of a federal court abstaining. Here, the infringement claims are governed by federal law but ownership of these patents will be settled by state contract law. It has been stated that New York state law governs the contracts that are central to the determination of the ownership of the patents. Loral contends that this court is in a better position to apply New York state law than a California state court while NSC and FSC posit that state law predominates the ownership issue thus mandating this court's recusal.

■ It would appear that this factor weighs on the side of staying this action. Simply because this court sits in New York does not mean that it can apply New York state law any better than a California court. Federal courts are obliged to give comity to state courts and not to assume expertise where none may lie. *Carnegie–Mellon Uni-*

---

10. NSC and FSC claim that depositions have begun in the state court and that "NSC has delivered in excess of 10,000 pages of documents." Winters Decl. ¶ 6.

11. Indeed, Loral has previously invoked the California state courts in *Loral Corp. v. Moyes*, 174 Cal.App.3d 268, 219 Cal.Rptr. 836 (1985).

*versity v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988). We will not say that we are better equipped than California state courts to apply New York state law.

### 5. Avoidance of Piecemeal Litigation

The Supreme Court has stated that "[b]y far the most important factor in our decision to approve the dismissal [in *Colorado River* ] was the 'clear federal policy ... [of] avoidance of piecemeal adjudication.'" *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937. Clearly, the weight given each factor will vary according to the facts of each case considered but the avoidance of piecemeal litigation will be paramount if inconsistent verdicts and wasteful expenditure of judicial resources on duplicative litigation were to otherwise result. The desire to avoid this possibility will require a court to abstain in favor of another. *See General Reinsurance Corp. v. Ciba–Geigy Corp.,* 853 F.2d 78, 81 (2d Cir.1988); *Lumbermens Mut. Casualty Co. v. Connecticut Bank & Trust Co.,* 806 F.2d 411, 414 (2d Cir.1986); *Arkwright–Boston Mfrs. Mut. v. City of New York,* 762 F.2d 205 (1985); *Travelers Indem. Co. v. Monsanto Co.,* 692 F.Supp. 90 (D.Conn.1988).

Loral presents an unconvincing argument that piecemeal litigation can only be avoided by this court. They point to the fact that this court is the only court that can bind all of the interested parties in this litigation whereas a decision in California cannot bind the infringing defendants. Although this is true, the argument is premised on the rather shaky assumption that this court will be the first to reach judgment on the issue of ownership. Unfortunately, our courts are overwhelmed by litigation and it takes several months for motions to be decided and years for trials to occur. There is no guarantee that Loral would succeed on summary judgment thus enabling it to use this decision as res judicata against NSC and FSC. Indeed, it is easily imaginable that were this court not to abstain, the California court and this court could both proceed to judgment with conflicting resolutions leaving the infringing defendants liable not only to Loral but to NSC and FSC. Certainly, there can be no

argument that this is a desired state of affairs.

We cannot enjoin the California state court from proceeding; however, we have the ability to restrain ourselves while the California court resolves the issue so that we may continue with this litigation which is ultimately dependent on a resolution of the ownership issue. This litigation has taken up considerable time and resources of this court; abstention is not granted easily. Yet, in the interest of justice, there can be no other course but to stay this action pending the resolution of the California state action which we hope will be obtained quickly. The proof and questions of law of the infringement and ownership issues differ greatly; ownership of these patents is governed by state contract law whereas infringement is governed by federal law; the infringing defendants have little to contribute to the ownership issue and will merely waste their time by being involved.

Dismissal of this case would be inappropriate as the California court does not have all of the interested parties in this patent litigation before it. Indeed, it is only deciding the limited question of who owns these patents. If the California court decides that Loral owns the patents, then this suit should go forward as it is more than prepared to do; however, if the patents are deemed to be owned by NSC or FSC, then it would be appropriate to dismiss this litigation at that time but not before. Loral has presented a compelling argument that it indeed owns these patents, this court cannot say that the issue is cut and dried and therefore dismiss this litigation. Instead, we will await the outcome of the California litigation and proceed accordingly thereafter.

### C. Judicial Estoppel

■ Finally, Loral urges us not to dismiss or stay the claims against NSC and FSC on the grounds that they are judicially estopped from asserting any claim of ownership to the patents. Under this theory, the representations made by NSC to the federal court in California during the discovery phase of this litigation have bound NSC and FSC and

prohibit them from taking a contrary position in this or any other litigation.

■ Judicial estoppel is a rarely used doctrine and exists to protect the court, not a party, from a party's chicanery. *In re Cassidy,* 892 F.2d 637, 641 (7th Cir.1990), *cert. denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1991). "The principle is that if you prevail in Suit #1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events." *Eagle Found., Inc. v. Dole,* 813 F.2d 798, 810 (7th Cir.1987). Inconsistencies in litigation are not a rare occurrence as discovery develops shedding new light on previously made allegations requiring adjustment. "The offense is not taking inconsistent positions so much as it is *winning,* twice, on the basis of incompatible positions." *Id.*

Judicial estoppel is not recognized by some circuits. *See United States v. 49.01 Acres of Land,* 802 F.2d 387, 390 (10th Cir.1986) ("The Tenth Circuit, however, has rejected the doctrine of judicial estoppel."); *Konstantinidis v. Chen,* 626 F.2d 933 (D.C.Cir.1980) (stating that the D.C. Circuit has not adopted the doctrine and finds nothing to warrant its adoption). The Second Circuit has adopted it but infrequently. Four cases have set forth the factors required to be shown. *Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1037 (2d Cir.1993); *Merrill Lynch, Pierce, Fenner & Smith v. Georgiadis,* 903 F.2d 109 (2d Cir.1990); *Young v. United States Dep't of Justice,* 882 F.2d 633, 639–40 (2d Cir.1989), *cert. denied,* 493 U.S. 1072, 110 S.Ct. 1116, 107 L.Ed.2d 1023 (1990); *Sperling v. United States,* 692 F.2d 223, 227–29 (2d Cir.1982), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). The *Bates* court stated that the prior inconsistency must have been adopted by the court in some manner and the party must have succeeded and is now asserting a position adverse to that position.

Here, NSC and FSC disavowed ownership in discovery proceedings at a time at which they were not a party and ostensibly had no interest. NSC and FSC assert that as they understood the situation at that time, their statements were accurate but information has come to light since then that has led to the California state action.

There was no final adjudication of the ownership question. The fact that Magistrate Judge Hamilton stated that Loral owned the patents is not dispositive; she stated what was commonly thought to be the case at that time. There is no indication that Magistrate Judge Hamilton heard evidence as to the ownership question and thereby resolved it. Thus, the Magistrate's statement has no conclusive weight and it cannot be said that a final judgment adverse to NSC and FSC's position at that time was obtained. Indeed, NSC was ordered to comply with the subpoena insofar as licensing agreements were to be turned over. Thus, even if the magistrate's order was conclusive as to ownership, NSC can hardly be characterized as the winner on its motion to be relieved of the requirement of complying with the subpoena. Judicial estoppel is not present here.

## CONCLUSION

It is hereby ordered that these two related actions be stayed until resolution of the litigation that is currently before the California state court.

SO ORDERED.