The **TRAVELERS INDEMNITY COMPANY, Liberty Mutual Insurance Company, and American Motorists Insurance Company, Plaintiffs,**

v.

**CROWN CORK & SEAL COMPANY, INC., Crown Beverage Packaging, Inc., Continental Holdings, Inc., Sonoco Products Company, Sonoco Fibre Drum, Inc., and KMI Continental Fibre Drum, Inc., Defendants.**

No. 93 Civ. 0993 (SWK).

United States District Court,
S.D. New York.

Oct. 25, 1994.

Simpson Thacher & Bartlett by Barry R. Ostrager, Mary Kay Vyskocil, Nancy B. Mallery, Aron, Twomey, Hoppe & Gallanty by Michael E. Twomey, Law Office of Samuel A. Almon by Samuel A. Almon, New York City, Manta & Welge by Albert L. Piccerilli, Princeton, NJ, Drinker Biddle & Reath by T. Andrew Culbert, Philadelphia, PA, for plaintiffs.

Waters, McPherson, McNeill, P.C. by Gregory J. Castano, Mark J. McPherson, Genevieve Raganelli, Robert J. Donaher, Secaucus, NJ, Williams, Caliri, Miller & Otley by Hope M. Pomerantz, Wayne, NJ, for defendants.

KRAM, District Judge.

In this insurance coverage dispute, defendants move for an order dismissing the complaint on the grounds that plaintiffs have failed to allege a justiciable case or controversy. Defendants also move, pursuant to Rules 12(b)(7) and 19(b) of the Federal Rules of Civil Procedure, for an order dismissing the complaint for failure to join an indispensable party. Alternatively, defendants move for an order either dismissing or staying the action on federal abstention grounds. Plaintiffs oppose defendants' motions. For the reasons set forth below, defendants' motion to dismiss is denied and defendants' motion to stay is granted.

## BACKGROUND

### I. The Insurance Policies

Between 1962 and 1983, plaintiffs The Travelers Indemnity Company ("Travelers

Indemnity"), Liberty Mutual Insurance Company ("Liberty Mutual") and American Motorists Insurance Company ("American Motorists") issued primary insurance policies to a corporate entity known as Continental Can Company, Inc. ("Continental Can"). Specifically, Travelers Indemnity issued three comprehensive general liability insurance policies to Continental Can between 1962 and 1968. Liberty Mutual issued six public liability insurance policies and six comprehensive combination insurance policies to Continental Can between 1968 and 1973. American Motorists issued eight comprehensive general liability insurance policies to Continental Can between 1973 and 1983.[1] Continental Can is the only named insured in each of the Continental Can policies.

Each policy issued by Travelers Indemnity and Liberty Mutual contained a $100,000 per occurrence property damage limit. With respect to the policies issued by American Motorists, the first four policies contained a $100,000 per occurrence property damage limit and the other four policies contained a $1 million per occurrence property damage limit. Continental Can supplemented these insurance policies by purchasing additional layers of insurance coverage from four other primary insurance carriers and more than seventy-five excess insurance carriers.

Continental Can subsequently was dissolved and defendants Crown Cork & Seal Company, Inc. ("Crown Cork"), Crown Beverage Packaging, Inc. ("Crown Beverage"), Continental Holdings, Inc. ("Continental Holdings"), Sonoco Products Company ("Sonoco Products"), Sonoco Fibre Drum, Inc. ("Sonoco Fibre") and KMI Continental Fibre Drum, Inc. ("KMI") acquired the Continental Can's manufacturing operations.

Continental Can's former manufacturing operations have since become the source of more than 100 environmental claims arising out of approximately 100 hazardous waste sites located throughout the country.[2] Defendants, as acquirers of Continental Can, have been forced to defend against these claims pursuant to federal and state successor liability doctrines.

## II. The New Jersey Actions

Defendants claim that the primary insurance policies, including the Continental Can policies, and the excess insurance policies provide coverage for the environmental liability incurred as a result of defendants' acquisition of Continental Can's manufacturing operations. Accordingly, in 1991 and 1992, defendants commenced three separate declaratory judgment actions against the seven primary insurance carriers and the more than seventy-five excess insurance carriers. Specifically, in June 1991, Crown Cork and Crown Beverage commenced an action in New Jersey Superior Court in Hudson County (the "Crown action"). *See Crown Cork & Seal Co., Inc. v. Travelers Indem. Co.,* HUD–L–5956–91. Subsequently, in October 1991, Continental Holdings instituted an action in New Jersey Superior Court in Middlesex County (the "Continental action"). *See Continental Holdings, Inc. v. AIU Ins. Co.,* L–12453–91. Finally, in August 1992, Sonoco Products, Sonoco Fibre and KMI commenced an action in New Jersey Superior Court in Hudson County (the "Sonoco action"). *See Sonoco Prods. Co. v. American Motorists Ins. Co.,* HUD–L–7500–92 (collectively, the "New Jersey actions"). Travelers Indemnity, Liberty Mutual and American Motorists are named defendants in each of the New Jersey actions. The New Jersey actions address not only the coverage obligations of the primary and excess insurers, but also substantive insurance contract claims and the application of the Continental Can policies to the numerous hazardous waste sites located throughout the country.

The Crown and Sonoco actions were assigned to Judge Joseph T. Ryan ("Judge Ryan") and have been proceeding concurrently. In January 1993, Crown Cork and Crown Beverage moved for the consolidation of the New Jersey actions in the New Jersey

---

**1.** The twenty-three insurance policies shall hereinafter be referred to as the "Continental Can policies."

**2.** Although these hazardous waste sites are located throughout the country, the largest number is found in New Jersey, accounting for twenty-eight sites.

Superior Court in Hudson County. *See* Notice of Motion for Consolidation of Actions, annexed to the Affidavit of Gregory J. Castano, sworn to on May 10, 1993 (the "Castano Aff.") as Exh. "E." American Motorists opposed consolidation on the grounds that it was "premature" to decide whether consolidation in Hudson or Middlesex County was appropriate. *See* Tr. of Hr'g, annexed to defendants' Reply Brief as Exh. "C," at 24. Judge Ryan ultimately decided to withhold a decision on whether to consolidate the New Jersey actions, consolidating the Crown and Sonoco actions for discovery purposes only. *See* Consolidation Order, annexed to the Castano Aff. as Exh. "D."

The parties dispute the amount of progress that has been made in the New Jersey actions. According to plaintiffs, the parties have engaged in limited document discovery involving the exchange of policies and the production of a relatively small quantity of documents concerning the underlying claims. *See* Affidavit of Nancy B. Mallery, sworn to on June 10, 1993, at ¶ 5. Moreover, plaintiffs state that few rulings have been made in any of the New Jersey actions and that it is unlikely that the cases will be resolved in the near future. *Id.* at ¶ 6.

According to defendants, however, a substantial number of documents have been either exchanged or ordered to be exchanged. These include the policies, summaries and claims files for seventy-five hazardous waste sites, underwriting files and information regarding corporate histories. Further, four case management orders have been issued in order to expedite and coordinate the progress of the discovery proceedings. *See* Case Management Orders I–IV, annexed to the Castano Aff. as Exh. "A." Additionally, several motions have been briefed by the parties and many of these have now been decided.

### III. The Present Action

On February 19, 1993, Travelers Indemnity, Liberty Mutual and American Motorists commenced this action by filing a complaint against defendants based on the Court's diversity jurisdiction. Plaintiffs seek to interplead defendants, pursuant to Rule 22 of the Federal Rules of Civil Procedure, on the grounds that defendants' insurance coverage claims may expose plaintiffs to multiple liability (First Claim for Relief). Further, plaintiffs seek a declaratory judgment establishing which, if any, of the six defendants has standing to assert claims for insurance coverage as successors to the Continental Can policies (Second Claim for Relief). Plaintiffs allege that a final resolution of the coverage issue would serve the interests of all parties in that plaintiffs would be able to provide coverage to the appropriate defendants in the environmental claims against them and all parties would avoid unnecessary litigation costs.

Defendants now move to dismiss the complaint on the grounds that plaintiffs have failed to present a justiciable case or controversy. Specifically, defendants argue that neither Rule 22 of the Federal Rules of Civil Procedure, nor the Declaratory Judgment Act, 28 U.S.C. § 2201, provides a jurisdictional predicate for plaintiffs' pursuit of a federal judgment.

Defendants also move, pursuant to Rules 12(b)(7) and 19(b) of the Federal Rules of Civil Procedure, for an order dismissing the complaint for failure to join an indispensable party. Specifically, defendants argue that the approximately eighty other primary and excess insurance carriers are indispensable to any determination relating to defendants' entitlement to coverage with respect to the hazardous waste clean-up sites. Defendants argue that the complaint should be dismissed, as joinder of the indispensable parties would defeat the Court's diversity jurisdiction.

In the alternative, defendants move for an order dismissing or staying the action on federal abstention grounds. Specifically, defendants argue that the Court should abstain from proceeding with the present action pending final resolution of the New Jersey actions. Plaintiffs oppose defendants' motions to dismiss or stay the action. For the reasons set forth below, defendants' motion to dismiss is denied and defendants' motion to stay is granted.

## DISCUSSION

### I. Justiciable Case or Controversy

Defendants argue that plaintiffs have failed to present a justiciable case or controversy. According to defendants, there is no actual controversy requiring resolution under either Rule 22 of the Federal Rules of Civil Procedure or the Declaratory Judgment Act, 28 U.S.C. § 2201. The Court disagrees.

▆▆▆ In order for a federal court to assert jurisdiction over an action, the court must find that a justiciable "case or controversy" exists. *See* U.S. CONST. art. III, § 2. A justiciable case or controversy exists when a plaintiff alleges "some threatened or actual injury" resulting from defendants' actions. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 618, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973). Such injury must be "sufficiently real and immediate" as opposed to merely "conjectural" or "hypothetical." *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 595–96 (2d Cir.1988) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494–496, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974)).

Rule 22 of the Federal Rules of Civil Procedure provides, in pertinent part:

> Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants.

Fed.R.Civ.P. 22. Rule 22 interpleader is an appropriate option for a stakeholder seeking protection from multiple liability and facing the prospect of defending multiple claims to the same fund. *Washington Elec. Coop., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir.1993). The court's jurisdiction does not depend upon the validity of the claims of the various defendants. *A/S Kredit Pank v. Chase Manhattan Bank*, 155 F.Supp. 30, 34 (D.N.Y.1957) (citing *Metropol-itan Life Ins. Co. v. Segaritis*, 20 F.Supp. 739, 741 (E.D.Pa.1937)). In fact, the adjudication of the case may well lead to a determination that one or more of the interpleaded parties is not entitled to recover from the plaintiff. *Id.*

The Declaratory Judgment Act provides, in relevant part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The general purpose of the Declaratory Judgment Act is to provide an immediate forum for the adjudication of rights and obligations in an actual controversy. *Duggins v. Hunt*, 323 F.2d 746, 748 (10th Cir.1963). In determining whether a declaratory judgment is appropriate, the court must decide "whether the allegations reflect the existence of a substantial controversy of a sufficient immediacy and reality between the parties." *Reichhold Chems., Inc. v. Travelers Ins. Co.*, 544 F.Supp. 645, 650 (E.D.Mich.1982) (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). In the insurance coverage context, the Declaratory Judgment Act provides an "extremely useful procedural device for adjudicating disputes." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1064 (6th Cir.1987).

▆▆▆ In the case at hand, the Court finds that plaintiffs have presented a justiciable case or controversy under both Rule 22 and the Declaratory Judgment Act. In the New Jersey actions, defendants claim that they are entitled to coverage under the Continental Can policies. In the present case, plaintiffs allege that, as the Continental Can policies contain "per occurrence" property damage monetary limitations, *see* Complaint at ¶¶ 17–19, the competing claims of the defendants for the same policy rights expose plaintiffs to "multiple litigations and potential multiple liability under [the Continental Can] policies." *See id.* at ¶ 21. Under these facts, the Court finds that the claims against plain-

tiffs in this case are "'sufficiently real and immediate,'" *Alliance of Am. Insurers v. Cuomo*, 854 F.2d at 595–96 (quoting *O'Shea v. Littleton*, 414 U.S. at 494–496, 94 S.Ct. at 675–76), such that an actual controversy now exists between the parties.

The cases cited by defendants are not to the contrary. In *Macmillan, Inc. v. Federal Ins. Co.*, 764 F.Supp. 38, 42 (S.D.N.Y.1991) ("*Macmillan*"), the Court held that there was no "case or controversy" in an insurer's declaratory judgment action, as neither insured party had sought reimbursement under the insurance policy. In the present case, in contrast, defendants have filed three lawsuits against plaintiffs in state court seeking coverage for over 100 environmental claims against them. Thus, unlike in *Macmillan*, plaintiffs here are confronted with actual claims against them.

Defendants' reliance upon *Reichhold Chems., Inc. v. Travelers Ins. Co.*, 544 F.Supp. 645 (E.D.Mich.1982) ("*Reichhold*"), is similarly misplaced. In *Reichhold*, the court dismissed the plaintiff's declaratory judgment action on the grounds that, as the insurance companies conceded that a duty of coverage was owed plaintiff, there was no "substantial" controversy before the court. *Id.* at 650–51. *Reichhold* is not relevant to the present case, however, as plaintiffs dispute defendants' contention that all defendants are covered by the Continental Can policies. Accordingly, the Court finds that plaintiffs have pleaded an "actual case or controversy" permitting adjudication under Rule 22 of the Federal Rules of Civil Procedure and the Declaratory Judgment Act.

## II. Failure to Join an Indispensable Party

■ Defendants next argue that the complaint must be dismissed for failure to join an indispensable party. Pursuant to Rule 19 of the Federal Rules of Civil Procedure, the court must conduct a two-step inquiry to determine whether an action must be dismissed for failure to join an indispensable party. *See Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir.1990). First, the court must focus on whether the presence of the party to the action is necessary. Specifically, Rule 19(a) provides, in relevant part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claims interest.

Fed.R.Civ.P. 19(a).

If Rule 19(a)'s threshold standard is met and joinder of the party divests the court of jurisdiction, the court should next consider whether dismissal is warranted under Rule 19(b). Pursuant to this second prong, the court must determine whether the suit can proceed "in equity and good conscience" without the necessary party. *Associated Dry Goods v. Towers Fin. Corp.*, 920 F.2d at 1124. Specifically, Rule 19(b) provides that:

> If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.

Fed.R.Civ.P. 19(b). As a general rule, however, courts prefer to avoid dismissing the action. Thus, "very few cases should be terminated due to the absence of non-diverse parties unless there has been a reasoned determination that their non-joinder makes just resolution of the action impossible." *Jaser v. New York Property Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir.1987).

Defendants maintain that the approximately eighty other primary and excess insurance carriers are indispensable parties, pursuant to Rule 19(b), and that, without their presence, the Court must dismiss the complaint.

Specifically, defendants argue that all primary and excess insurance carriers involved in the dispute in the New Jersey actions must be joined in the present action in order to determine defendants' entitlement to insurance coverage.

The Court does not need to reach the second prong in the Rule 19 analysis as defendants have failed to meet the threshold requirement of establishing that the absent parties are "necessary" to the resolution of the dispute before the Court. In the present case, plaintiffs seek an order declaring which, if any, of the defendants is entitled to coverage as a result of the Continental Can policies. In order to resolve this issue, the Court does not need to join the other primary and excess insurance carriers. Rather, the parties currently before the Court are the only parties necessary to a resolution of the coverage issue. *See Remington Arms Co. v. Liberty Mut. Ins. Co.*, 748 F.Supp. 1057, 1065 (D.Del.1990) (stating that, "[a]s a general proposition, courts and commentators agree that additional or excess insurers are not necessary parties to a suit between an insured and its primary or first layer excess insurer"); *Continental Casualty Co. v. PPG Indus., Inc.*, No. 86C 6076, 1987 WL 6601, at *2 (N.D.Ill. Feb. 6, 1987) (stating that excess carrier insurer parties not necessary to a determination of a dispute between an insured and its primary insurance carrier); *Special Jet Servs., Inc. v. Federal Ins. Co.*, 83 F.R.D. 596, 599 (W.D.Pa.1979) (stating that third parties are generally not necessary in an action to determine rights of parties under a contract simply because the third parties' rights may be affected by the outcome). Accordingly, defendants' motion to dismiss, pursuant to Rules 12(b)(7) and 19(b), is denied.

## III. Motion to Stay

■ Finally, defendants argue that the Court should either dismiss or stay the present action on federal abstention grounds. Specifically, defendants assert that, as the coverage issue presented in the case at hand is currently the subject of broader litigation in the New Jersey actions, the Court should abstain from deciding the narrow coverage issue. Plaintiffs oppose defendants' motion on the grounds that this case does not meet the "exceptional circumstances" test set out under the relevant federal abstention doctrine. The Court disagrees with plaintiffs' contention and finds that "exceptional circumstances" warrant a stay of the instant action.

The Supreme Court has recognized three major types of abstention. Abstention is appropriate where (1) the case presents "a federal constitutional issue which might be mooted" by a state court determination, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) ("*Colorado River*") (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)); (2) difficult questions of state law are presented that would have a substantial impact on important public policy, *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28–29, 79 S.Ct. 1070, 1072–73, 3 L.Ed.2d 1058 (1959); or (3) federal jurisdiction has been invoked for the purpose of restraining criminal proceedings. *Younger v. Harris*, 401 U.S. 37, 53–55, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971).

In *Colorado River*, the Supreme Court held that, where parallel state proceedings exist, even if a case does not fall within one of these three categories, abstention may be warranted if "exceptional circumstances" exist. *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246. Specifically, the Court stated that "there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions." *Id.* at 817, 96 S.Ct. at 1246. These principles rest on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)).

The *Colorado River* Court cautioned that the federal courts have a "virtually unflagging obligation" to hear cases within their

jurisdiction, and that a dismissal or stay in deference to a concurrent state court proceeding is permissible only if "exceptional circumstances" are found to exist. *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244. The Supreme Court has directed the federal courts to consider the following factors in determining whether a dismissal or stay is warranted: (1) whether jurisdiction has been assumed over specific property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law provides the rule of decision; and (6) whether adjudication in the state court would adequately protect plaintiff's federal rights. *See General Reinsurance Corp. v. CIBA–Geigy Corp.*, 853 F.2d 78, 81 (2d Cir.1988). No single factor is dispositive in balancing these six considerations. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983). Rather, the court must "do a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."[3] *Id.*

## A. Desirability of Avoiding Piecemeal Litigation[4]

The Supreme Court has stated that "[b]y far the most important factor in our decision to approve the dismissal [in *Colorado River*] was the 'clear federal policy ... [of] avoidance of piecemeal adjudication.'" *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 16, 103 S.Ct. at 937. The court must consider whether exercising federal jurisdiction would burden the parties by creating inconsistent disposition of the same issues and claims and by forcing the defendants to defend complex litigation on two fronts. *Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir.1985). The existence of concurrent state and federal proceedings "creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first." *Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 567, 103 S.Ct. 3201, 3214, 77 L.Ed.2d 837 (1983).

In the present case, the Court finds that this factor overwhelming weighs against the exercise of jurisdiction. The New Jersey actions encompass the entire litigation between defendants, plaintiffs and the approximately eighty other primary and excess insurers. Further, the New Jersey actions involve a significant number of issues dependent upon complex, site-specific facts. In fact, one of the major issues raised in the New Jersey actions is whether defendants are entitled to coverage under the Continental Can policies as successors to the named insured. This issue will necessarily be decided in the New Jersey actions in reaching the threshold determination of whether defendants are covered under the relevant policies.

In the instant case, the Court is presented only with those policies issued by plaintiffs, as opposed to the numerous policies issued by the approximately eighty other primary and excess insurers. Consequently, there is a substantial risk that the interpretation of these few policies to the exclusion of the others would lead to the inconsistent disposition of similar claims and issues.

**3.** As an initial matter, the Court rejects plaintiffs' contention that the New Jersey actions and the instant action are not parallel proceedings. Although the New Jersey actions address the larger dispute between the parties, the insurance coverage issue raised in the present case is central to a resolution of the New Jersey actions. *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 603 (2d Cir.1988) ("*Alliance*"), does not require the opposite result. In *Alliance*, the Court held that a simultaneous state proceeding was not a parallel proceeding, as the state case did not include the federal plaintiffs, the federal case did not include the state plaintiffs and the federal case raised federal constitutional questions not raised in the state case. These facts have no application to the case at bar.

**4.** The present case does not involve the exercise of jurisdiction over property. Moreover, there is no suggestion that the federal forum is less convenient than the state proceeding in New Jersey. Accordingly, the Court finds that the first and second factors weigh in favor of exercising federal jurisdiction. *See Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327–28 (2d Cir.1986) (stating that failure to consider factors weighing against dismissal inappropriately reverses the presumption in favor of exercising jurisdiction).

Plaintiffs argue, nonetheless, that the failure to exercise jurisdiction will itself lead to piecemeal litigation. Specifically, plaintiffs maintain that, as the New Jersey actions are currently divided into three separate proceedings, judicial resources are already unnecessarily duplicative. Moreover, according to plaintiffs, the exercise of jurisdiction is the only way to ensure the prompt, final resolution of the coverage issue. The Court finds this position to be without merit.

First, the Sonoco and Crown actions have already been consolidated for discovery purposes. Second, a motion is currently before a New Jersey state court to consolidate the Continental action along with the Sonoco and Crown actions. In fact, plaintiffs have opposed the consolidation of these three matters for all purposes on the grounds that consolidation was "premature." It is likely that complete consolidation can be achieved should plaintiffs decide to support Crown Cork and Crown Beverage's motion. Third, exercising jurisdiction in the present case would merely scatter an already complex litigation currently pending in the state courts. Allowing plaintiffs to litigate one issue, namely the insurance coverage issue, in federal court would encourage the other primary and excess insurance carriers similarly to splinter off their own narrow claims and seek to settle them separately in a federal forum. Fourth, it is unlikely, as plaintiffs claim, that the federal forum would provide a prompt resolution to the coverage issue. There has been no discovery in federal court with respect to the coverage issue and, given the general backlog of cases in federal court, it is unreasonable to expect this case to reach trial in the near future.

In reaching this decision, the Court is guided by several Second Circuit decisions. In *General Reinsurance Corp. v. CIBA–Geigy Corp.*, 853 F.2d 78 (2d Cir.1988) ("*General Reinsurance*"), for instance, the insured commenced an action in New Jersey Superior Court against three primary insurers and 135 excess insurers seeking a declaratory judgment that the insurance carriers were obligated to defend and indemnify the insured in numerous environmental claims against it. Previously, two of the primary insurance car-

riers had filed suit in federal court seeking a declaratory judgment as to their coverage obligations. In affirming the district court's decision to stay the federal action, the Court agreed with the district court's finding that the need to avoid piecemeal litigation was the factor entitled to the greatest weight under *Colorado River*. *Id.* at 81. The Court rejected the insurance carrier's attempt to characterize the federal and state actions as separate merely because they focused upon different issues. The Court stated that "[a]s the New Jersey action embraces all these issues, the risk of piecemeal litigation is real and should be avoided." *Id.*

Similarly, in *Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205 (2d Cir.1985) ("*Arkwright*"), the Court affirmed the district court's decision to stay an action under *Colorado River's* "exceptional circumstances" test. In *Arkwright*, defendant was the subject of numerous lawsuits in federal and state courts arising out of damage caused by an underground water main burst. The Second Circuit affirmed the district court's decision to stay the proceeding, in part, on the grounds that the potentially inconsistent disposition of the claims in the federal and state forums "could burden the parties for years to come." *Id.* at 211. In so holding, the Court noted that it was "likely that the numerous claims … will be consolidated for all purposes, including discovery and joint-trial, in a single state-court action." *Id.*

In another case relevant to the case at hand, *Lumbermens Mut. Casualty Co. v. Connecticut Bank & Trust Co., N.A.*, 806 F.2d 411 (2d Cir.1986) ("*Lumbermens*"), plaintiff, an excess insurance carrier, sought a declaratory judgment with respect to its coverage obligations. In affirming the district court's decision to stay the action in favor of a pending state court action, the Court found that "[t]he critical factor, to us, however, is the desirability of avoiding piecemeal litigation and the possibility of two interpretations of the same policy language in different courts, leaving the insured possibly with insufficient coverage from the insurers after years of paying premiums." *Id.* at 414. The Court stated further that "the avoidance

of piecemeal litigation should be given great weight in the context of declaratory judgment actions because such litigation would complicate and fragment the trial of cases and cause friction between state and federal courts." *Id.*

The reasoning of the Second Circuit in *General Reinsurance, Arkwright* and *Lumbermens* applies with equal force to the case at bar. The New Jersey actions encompass many issues, including the coverage issue presented by plaintiffs in this case. The New Jersey actions are proceeding before two judges and the prospect of complete consolidation would be greatly increased should plaintiffs support Crown Cork and Crown Beverage's motion to consolidate which is currently under consideration. The Court finds that the exercise of jurisdiction in this case would lead to unnecessary fragmentation as well as undesirable friction between this Court and the New Jersey state courts. Accordingly, the Court finds that this factor weighs heavily in favor of abstention.

## B. Order in Which Jurisdiction Was Obtained

The fourth factor the Court must consider under the *Colorado River* test is the order in which jurisdiction was obtained. This factor entails not only observing the chronological order in which the state and federal actions were filed, but also examining the relative progress of the two proceedings. *De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989); *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir.1986). As one court has observed, "[i]f a court has already devoted considerable time, energy, and resources to understanding the issues, it is usually the best course to allow that court to proceed with the litigation." *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 840 F.Supp. 211, 216 (E.D.N.Y. 1994).

The New Jersey actions were filed in 1991 and 1992. Specifically, the Crown action commenced in June 1991, the Continental action was filed in October 1991 and the Sonoco action commenced in August 1992. Plaintiffs filed the present federal action in February 1993, many months after the institution of each of the New Jersey actions. More significantly, the state courts have made far more progress in resolving the dispute among the parties than this Court. Notwithstanding plaintiffs' claim that the parties have engaged in limited document discovery, it is evident, based upon the record before the Court, that the state courts not only have engaged in extensive discovery but also have heard significant motions including motions to dismiss, to sever and stay, for summary judgment and to resolve choice of law issues. In contrast, the parties in this case have not yet engaged in any discovery and the Court has not heard any other motions in this case. Accordingly, the Court finds that this factor also weighs in favor of abstention.

## C. Rule of Decision

The fifth factor the Court must weigh is whether federal or state law provides the rule of decision. Although the absence of federal issues does not require the surrender of jurisdiction, it does favor abstention where "the bulk of the litigation would necessarily revolve around the state-law ... rights of [the numerous] parties." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 23 n. 29, 103 S.Ct. at 941 n. 29.

The present case does not present any federal issues requiring resolution by the Court. Moreover, the resolution of the insurance coverage claims is based upon interpretations of numerous insurance policies under the laws of various states other than New York. There is no indication that the state courts are incapable of resolving any relevant choice of law issues. *See Lumbermens*, 806 F.2d at 415 (stating that the fact that the state court may confront choice of law issues does not counsel against abstention). Additionally, as a substantial number of the hazardous waste clean-up claims arose in New Jersey, it is particularly appropriate that the coverage issue be resolved in New Jersey state court. Accordingly, although not determinative, this factor provides no particular basis for this Court to exercise jurisdiction.

### D. Adequate Protection in State Court

The sixth factor that the Court must consider is whether the interests of the party invoking federal jurisdiction will be adequately protected in state court. If the Court finds that the party's rights may be threatened in state court, this factor would weigh heavily in favor of exercising jurisdiction. *De Cisneros v. Younger*, 871 F.2d at 309. However, the fact that a party's rights are protected in state court does not militate in favor of abstention. *Zemsky v. City of New York*, 821 F.2d 148, 153 (2d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987).

Plaintiffs argue that the unavailability of a comprehensive, prompt adjudication in the New Jersey actions is evidence that their rights are threatened. The Court disagrees and finds that the state court forum adequately protects plaintiffs' rights. First, even if the Court were to retain jurisdiction, it would only determine the narrow issue of coverage. Thus, plaintiffs would still find themselves without a comprehensive, prompt adjudication of their rights. Second, as discussed earlier, it is unlikely that the parties would be able quickly to resolve the coverage issue in federal court. Finally, as the Court is staying rather than dismissing this action, plaintiffs shall have an opportunity to pursue their claims in federal court in the event that their interests are not adequately protected in state court. Accordingly, the Court finds that this factor does not weigh in favor of exercising jurisdiction.

Based upon this analysis of the *Colorado River* "exceptional circumstances" test, the Court finds that abstention in favor of the continuing New Jersey state court proceedings is appropriate. Accordingly, defendants' motion for an order staying the present action is granted.

### CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the complaint on the grounds that plaintiffs have failed to plead an actual case or controversy is denied. Defendants' motion, pursuant to Rules 12(b)(7) and 19(b) of the Federal Rules of Civil Procedure, for an order dismissing the complaint for failure to join an indispensable party, is also denied. Defendants' motion, in the alternative, for an order either dismissing or staying the action on federal abstention grounds is granted and the action is stayed. This matter is hereby placed on the suspense docket pending notification by the parties of the conclusion of the state action. The parties are directed to give the Court joint, written status reports concerning the progress of the New Jersey actions every six months beginning February 1, 1995.