ZURICH INSURANCE COMPANY, Plaintiff-Appellee, v. RAYMARK IN-DUSTRIES, INC., Defendant-Appellee (Northbrook Excess and Surplus Insurance Company, Intervening Plaintiff; Federal Insurance Company *et al.*, Defendants-Appellants).

First District (1st Division) Nos. 85—112, 85—129, 85—131 cons.

Opinion filed May 27, 1986.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, Michael J. Merlo, and Mark C. Amador, of counsel), for appellant American Home Assurance Company.

Robert D. Kolar & Associates, Ltd., of Chicago (John R. Fanone and Robert D. Kolar, of counsel), for appellant American Centennial Insurance Company.

Rooks, Pitts, & Poust, of Chicago (Terrence E. Kiwala, of Chicago, and Hogan & Hartson, of Washington, D.C., of counsel), for appellant First State Insurance Company.

Peterson, Ross, Schloerb & Seidel, of Chicago (Michael M. Lane and Richard R. Ryan, of Chicago, and White & Case, of New York, New York, of counsel), for appellant Federal Insurance Company.

Bell, Boyd & Lloyd, of Chicago, for appellee Raymark Industries, Inc.

Keck, Mahin & Cate and Thaddeus S. Snell, both of Chicago, for *amicus curiae* United States Gypsum Company.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

In these three consolidated interlocutory appeals, three excess insurers of Raymark Industries, Inc., challenge the trial court's decision to join them as necessary parties in a declaratory judgment action. Review has been granted pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308).

Raymark Industries, Inc., formerly Rabestos-Manhatten, Inc., has been named as a defendant in thousands of lawsuits brought by individuals alleging they sustained injuries because they were exposed to asbestos-containing products that it manufactured. Several hundred lawsuits continue to be filed against it each month. Since the 1940's, Raymark has been insured under successive policies of comprehensive general liability insurance issued by various primary insurers. For many years, Raymark has also carried several layers of excess insurance to cover it for losses above the limits of its primary policies.

In 1978, one of Raymark's primary insurers, Zurich Insurance Company (Zurich), filed a declaratory judgment action in the circuit court of Cook County against Raymark and other primary insurers of Raymark. Zurich provided primary coverage for Raymark since October 15, 1969. Specifically, Zurich's complaint sought a declaration concerning the rights and obligations of the various insurers to provide coverage and defense for asbestos-related claims brought against Raymark. Early in the litigation one of Raymark's excess carriers, Northbrook Excess Surplus Insurance Company (Northbrook), sought successfully to intervene in the case.

After conducting evidentiary hearings in May and June 1983, the trial court determined rules of coverage under the various primary policies, but did not provide for the allocation of the indemnity and defense responsibilities among the insurers whose policies were adjudged to be responsive to the underlying cases. The litigants made several post-trial motions which were ultimately disposed of by a final and appealable order. The rulings by the trial court were appealed to

this court. *Zurich Insurance Company v. Raymark Industries, Inc.* (1986), 145 Ill. App. 3d 175.

Prior to the court's entry of its final order, Zurich informed Raymark that it had reached the $12 million aggregate limits of its policies, and stated in open court on October 31, 1983, that it had exhausted its limits and no longer was obligated to defend Raymark. Consequently, on November 16, 1983, Raymark filed a motion for interim funding of indemnity and defense expenses, asserting Zurich's exhaustion of its limits as a predicate for such funding. Raymark alleged that Zurich was refusing to make any further payments and that Raymark was not financially capable of incurring these expenses itself.

Raymark's motion was granted by the trial court. Specifically, the interim funding order created a trust fund into which the primary carriers other than Zurich contributed monthly sums to fund the claims brought against Raymark. In approving the funding order, the trial court indicated that when carriers providing excess coverage for these claims could be brought before it, the court would entertain a motion to recompute contributions to the trust fund.

At the time the November funding order was entered, Northbrook was the only first level excess insurer who was a party to the case. Consequently, on November 18, 1983, defendant Federal Insurance Company (Federal), one of Raymark's primary insurers, moved pursuant to section 2—405 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—405) to join as necessary parties three of Raymark's other first-layer excess carriers, American Home Assurance Company (American Home), First State Insurance Company (First State) and American Centennial Insurance Company (American Centennial). Federal alleged that these three excess carriers were necessary for a complete determination of the issues involved in the case.

On November 22, 1983, the trial court granted the joinder motion and ordered that Zurich's complaint be amended to add as defendants the three excess insurers.

In March 1984, American Home filed a motion to dismiss, American Centennial filed a motion for summary judgment, and First State moved for summary judgment or, alternatively, to dismiss the complaint. The excess insurers asserted in their motions that they were not necessary parties and had been misjoined. In October 1984, during the pendency of the motions, the trial court ordered that the interim funding order be amended to require participation by the three excess insurers in question. On December 27, 1984, the trial court denied each of the motions of the excess insurers, but certified certain

questions for review pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308). The certified questions seek a determination as to whether each of the three excess carriers were necessary parties; whether an actual case or controversy existed at the time of joinder which involved each of the excess carriers; and whether the motions for summary judgment and/or to dismiss were properly granted. We granted leave to appeal and consolidated each of the three interlocutory appeals for our review.

■■ At the outset, we note that the excess insurers contend it was improper for Federal to bring the joinder motion because Federal was a defendant, and not a plaintiff, in the underlying declaratory judgment action. While Federal fails to address this point in its brief, it is clearly irrelevant who brought the motion. Joinder of necessary parties is jurisdictional (*People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 373 N.E.2d 471), and therefore the issue may be raised by any of the parties or by the trial or reviewing courts *sua sponte* (*Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 362 N.E.2d 382).

■■ Turning to the merits of this case, section 2—405 of the Code of Civil Procedure provides for the joinder as a defendant of any person "whom it is necessary to make a party for the complete determination or settlement of any question involved" in the controversy. (Ill. Rev. Stat. 1985, ch. 110, par. 2—405(a).) It is not necessary that each defendant be interested as to all the relief prayed for. (Ill. Rev. Stat. 1985, ch. 110, par. 2—405(b).) Illinois courts have found that a "necessary" party under section 2—405 is one who has a legal or beneficial interest in the subject matter of the litigation and will be affected by the action of the court. (*National Bank v. S.N.H., Inc.* (1975), 32 Ill. App. 3d 110, 336 N.E.2d 115.) Once a party is determined to be "necessary," the requirement of joinder is absolute. (32 Ill. App. 3d 110, 121, 336 N.E.2d 115.) In order to effectuate complete relief and dispose of an entire controversy in a declaratory judgment action, all persons legally interested in the subject matter of the litigation who may be affected by the judgment should be made parties. *Bezin v. Ginsburg* (1978), 59 Ill. App. 3d 429, 375 N.E.2d 468.

■■ Applying the above principles to the facts herein, we find that the three excess carriers were properly joined as necessary parties in the declaratory judgment action. The record reveals that American Home provided first layer excess coverage for Raymark from May 18, 1962, to May 18, 1976; First State provided first layer excess coverage from December 31, 1978, to December 31, 1979; and American Centennial provided first layer excess coverage between December 31, 1979, to December 31, 1982. Zurich has insured Raymark since

October 15, 1969, and therefore provided underlying primary coverage for each of the excess carriers. Consequently, since November of 1983, when Raymark and Zurich represented to the trial court that Zurich's primary limits were exhausted and that Zurich would cease making any further payments, there has been an actual controversy with the three excess carriers regarding coverage. Indeed, one of the excess insurers, American Home, conceded in its motion to dismiss that it has already made payments of $3 million on Raymark's behalf.

We observe that in the declaratory judgment action, the trial court was not asked to merely render an advisory opinion, but rather to determine who among the primary and excess carriers are obligated to fund the defense and indemnity of asbestos cases against Raymark and whether any carrier's previous payments in these cases should be reallocated. The excess carriers are necessarily implicated under any theory of allocation of indemnity and defense liability. This litigation cannot be resolved without either affecting the interests of the excess carriers or leaving the interests of the other parties herein in an inequitable position. (See *Rubin v. Boorstein* (1979), 73 Ill. App. 3d 689, 392 N.E.2d 919.) "The entry of a judgment in the absence of a necessary party amounts to a deprivation of property without due process of law." (73 Ill. App. 3d 689, 692, 392 N.E.2d 919.)

We note that American Home and First State allege that Zurich's limits will be reinfused at some future point because it will be entitled to contribution from other primary insurers under an "other insurance" clause in its policy. Citing *American Home Assurance Co. v. Northwest Industries, Inc.* (1977), 50 Ill. App. 3d 807, 365 N.E.2d 956), they conclude that their interest in this litigation is therefore speculative and thus they are improperly joined. We disagree. In *American Home*, the manufacturer (Michigan Chemical) and distributor (FBS) of animal feed were sued by approximately 75 farmers claiming that their product was contaminated. FBS and Michigan Chemical agreed to create a $60 million fund to settle the claims, but FBS reserved the right to reinstitute its claims for indemnity from Michigan Chemical once the $60 million was exhausted. At the time the trial court ruled that FBS was a necessary party to the litigation, the joint settlement fund was still intact, and there was no dispute between FBS and Michigan Chemical. The reviewing court found that the joinder was erroneous because after FBS and Michigan Chemical entered into the agreement, FBS' interest in the suit was no longer present and substantial, but contingent upon losses exceeding the $60 million limit. While Michigan Chemical argued that because of the number and size of the pending claims the limit would certainly be ex-

ceeded, the *American Home* court noted nothing in the record supported that assertion and that it was mere speculation.

We find *American Home* readily distinguishable from the case before us. In *American Home*, there was absolutely no evidence as to whether the limits of the $60 million fund would be exceeded. Rather, the court was merely asked to speculate whether the limits would be exceeded. In the present case, however, the record shows that both Zurich and Raymark have alleged that Zurich has already exceeded its $12 million aggregate policy limits and would no longer fund the defense and indemnity of the hundreds of claims being brought against Raymark each month. Here, it is actually the excess carriers who ask the court to speculate that Zurich's limits will be reinfused to the point where they will have no liability under their policies for any of the thousands of claims filed against Raymark.

Each of the excess carriers further allege in their briefs that Zurich's limits have not been properly exhausted. Such an allegation does not in and of itself render them improperly joined but at best merely raises an issue of fact to be resolved by the trial court.

In conclusion, these consolidated appeals and the companion case present complex litigation involving the trigger of coverage under various policies of insurance, the extent of the insurers' duty to defend and the allocation of expenses incurred in the defense of asbestos-related claims. Policies favoring judicial economy and basic fairness to all of the litigants require that the three excess insurers in question be joined as necessary parties where the primary insurer has alleged that its policy limits have already been exhausted. Accordingly, we conclude that each of the three excess carriers were necessary and proper to the declaratory judgment action, and that the trial court properly denied their motions for summary judgment and/or to dismiss. The cause is remanded to the trial court for further proceedings consistent with this opinion.

Remanded.

CAMPBELL and QUINLAN, JJ., concur.