806 F.2d 411
 LUMBERMENS MUTUAL CASUALTY COMPANY, Appellant,
v.
The CONNECTICUT BANK & TRUST CO., N.A., Raymark Corporation,
Raymark Industries, Inc., and Raymark Formed
Products Company, Appellees.
 No. 213, Docket 86-7593.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 19, 1986.
Decided Dec. 3, 1986.
 
 Wilson M. Brown, III, New York City (Drinker Biddle & Reath, New York City, J. Portis Hicks, Stewart Dalzell, Stephen P. Chawaga, of counsel, Thompson, Weir & Barclay, New Haven, Conn., Robert N. Schmalz, J. Philip Smyth, of counsel), for appellant.
 Larry L. Thompson, Chicago, Ill. (Bell, Boyd & Lloyd, Chicago, Ill., Frank K. Heap, Joan S. Kato, of counsel, Anderson, Russell, Kill & Olick, P.C., New York City, Randy Paar, of counsel), for appellees.
 Before LUMBARD, OAKES, and MINER, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 Lumbermens Mutual Casualty Company ("Lumbermens"), an insurance company headquartered in Illinois, appeals the stay of its declaratory judgment action against Raymark Industries, Inc., and its related corporations ("Raymark") in the United States District Court for the District of Connecticut, Ellen Bree Burns, Judge. Stay was granted in favor of a pending state court action in Illinois brought by Zurich Insurance Company ("Zurich") against Raymark and some of its other insurers in the circuit court of Cook County, Illinois, presenting identical insurance coverage issues. The district court reasoned that because this was a declaratory judgment action it had discretion to stay under Brillhart v. Excess Insurance Company of America, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), and did not have to follow the strictures of Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), which speak of the federal courts' "virtually unflagging obligation" to exercise its jurisdiction. The court also held that even if Colorado River and Moses H. Cone did apply, the present case involved "exceptional circumstances" warranting a stay because all of Raymark's primary and excess insurers, including Lumbermens, have been joined in the Illinois action. We affirm the stay, although we believe that Colorado River and Moses H. Cone apply.
 
 
 2
 Raymark is a manufacturer of products containing asbestos and has been named as a defendant in over 30,000 asbestos-related bodily injury lawsuits in which the plaintiffs claim they suffered injury or their decedents died due to exposure to Raymark's products. Since at least 1941 Raymark has purchased numerous primary policies of comprehensive liability insurance as well as varying amounts of additional "layers" of excess coverage. See Zurich Insurance Co. v. Raymark Industries, Inc., 144 Ill.App.3d 943, 944, 98 Ill.Dec. 508, 509, 494 N.E.2d 630, 631 (App.Ct.1986); Zurich Insurance Co. v. Northbrook Excess & Surplus Insurance Co., 145 Ill.App.3d 175, 180, 98 Ill.Dec. 512, 515-16, 494 N.E.2d 634, 637-38 (App.Ct.1986).
 
 
 3
 Lumbermens is a "second-layer" excess insurer of Raymark, its policies being excess to primary coverage provided by Zurich and first-layer excess coverage provided by American Home Insurance Company ("American Home"). Lumbermens' policies covered a period of only two out of the forty-two years for which Raymark purchased liability insurance and represent only $10,000,000 of Raymark's total of nearly $400,000,000 of liability insurance coverage.
 
 
 4
 Over eight years ago Zurich filed an action in Illinois for a declaratory judgment as to when bodily injury triggers coverage under comprehensive general liability policies, naming as defendants Raymark's other primary insurers. Zurich contended, like Lumbermens in the instant action, that injury triggering coverage occurs at the time of a claimant's exposure to asbestos while certain other of Raymark's primary insurers contended that injury triggering coverage occurs only at the time of the claimant's manifestation of symptoms of an asbestos-related disease. As the First Circuit pointed out in Liberty Mutual Insurance Co. v. Foremost-McKesson, Inc., 751 F.2d 475, 477 (1st Cir.1985), if these two actions were to proceed concurrently there is the real possibility that the two courts might interpret the same standard policy language differently. The First Circuit compared Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co., 682 F.2d 12, 19 (1st Cir.1982) (asbestosis "results" when it is manifested), cert. denied, 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983), with Keene Corp. v. Insurance Co. of North America, 667 F.2d 1034, 1046 (D.C.Cir.1981) (asbestos causes "injury" at time of exposure),cert. denied, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).
 
 
 5
 On September 29, 1983, the Illinois court issued an order relating to triggers of coverage for the primary insurance policies. Three other of Raymark's first-layer excess insurers were later joined in the Illinois action, see Zurich Insurance Co. v. Raymark Industries, Inc., supra, and on May 6, 1986, Raymark was given leave to join its remaining excess insurers, including Lumbermens, so as to adjudicate the entire coverage dispute in one comprehensive action.
 
 
 6
 Lumbermens brought this declaratory judgment action in federal court in Connecticut in March 1984. Raymark's first motion to dismiss or stay the Connecticut action was denied on September 30, 1985, because Lumbermens had not yet been made a party to the Illinois action. Lumbermens has now been joined in the Illinois action and the district court, on July 17, 1986, granted a renewed motion to stay, giving its reasons in an opinion dated August 4, 1986. We note that Lumbermens did not join the underlying insurers Zurich or American Home in this action, even though it agreed in its policies "[t]o indemnify the insured for such loss as would have been payable under all of the terms of the underlying policy(ies) ... provided the company's obligation hereunder shall apply only to the ultimate net loss in excess of such underlying insurance."
 
 
 7
 We agree with Lumbermens that the district court should have considered Colorado River and Moses H. Cone applicable even though this was a declaratory judgment action. We have applied these cases in a declaratory judgment action, Giardina v. Fontana, 733 F.2d 1047, 1052-53 (2d Cir.1984), as have other courts of appeals, see Mobil Oil Corp. v. City of Long Beach, 772 F.2d 534, 540-42 (9th Cir.1985) (applying Colorado River in diversity case for injunctive and declaratory relief); Liberty Mutual Insurance Co. v. Foremost-McKesson, Inc., 751 F.2d at 476-77 (declaratory judgment as to rights and obligations under liability insurance policies in Massachusetts district court stayed in favor of California state court proceedings under Colorado River and Moses H. Cone ). It is true that Justice Brennan's dissenting opinion in Will v. Calvert Fire Insurance Co., 437 U.S. 655, 670-72, 98 S.Ct. 2552, 2561-62, 57 L.Ed.2d 504 (1978), delineated the unique nature of declaratory judgment actions as he responded to what he perceived to be Justice Rehnquist's overly broad statement in the plurality opinion that courts are under no compulsion to exercise their jurisdiction and that ultimately "the decision whether to defer to the concurrent jurisdiction of a state court is ... a matter committed to the district court's discretion." 437 U.S. at 664, 98 S.Ct. at 2558. In disagreeing with the plurality, Justice Brennan thought that neither the logic nor the holding of Brillhart, a suit for a declaratory judgment, was pertinent in Calvert where federal jurisdiction was nondiscretionary. But as we say, our Giardina case, also a declaratory judgment action, used Colorado River analysis in holding that the district court erred by abstaining from exercising jurisdiction where the plaintiff was being whipsawed by a claim in New York that the federal court should dismiss under the probate exception to federal subject matter jurisdiction while simultaneously the claim was made in the Florida probate court that it lacked subject matter jurisdiction. See 733 F.2d at 1053. In addition, the First Circuit applied Colorado River analysis in the opinion by Judge Timbers, sitting by designation, in Liberty Mutual Insurance Co., a case as close to this one as it possibly can be.
 
 
 8
 Even under strict application of the "exceptional circumstances test" urged by Lumbermens and following Colorado River and Moses H. Cone, however, on balance we agree with the district court's granting a stay in this action. The factors that Moses H. Cone requires us carefully to weigh include, first, which court first assumed jurisdiction over any res or property involved in the action; second, the inconvenience of the forum; third, the desirability of avoiding piecemeal litigation; and, fourth, the order in which the courts obtained jurisdiction. 460 U.S. at 15, 103 S.Ct. at 936. The first factor is irrelevant here and, as regards the second, there plainly is no inconvenience to Lumbermens in forcing it to litigate in Illinois, its home state. It is true that the order in which the courts obtained jurisdiction over Lumbermens weighs against a stay, although the other primary and excess insurance companies had been involved in the Illinois litigation for some time. The critical factor to us, however, is the desirability of avoiding piecemeal litigation and the possibility of two interpretations of the same policy language in different courts, leaving the insured possibly with insufficient coverage from the insurers after years of paying premiums. See Liberty Mutual Insurance Co., 751 F.2d at 477. As the First Circuit said in Fuller Co. v. Ramon I. Gil, Inc., 782 F.2d 306, 309-10 (1st Cir.1986), citing Moses H. Cone, the avoidance of piecemeal litigation should be given great weight in the context of declaratory judgment actions because such litigation would complicate and fragment the trial of cases and cause friction between state and federal courts.
 
 
 9
 Lumbermens looks for support in Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325 (2d Cir.1986), which used Colorado River analysis to reverse dismissal of a diversity action on the basis that " 'the balance [of factors is] heavily weighted in favor of the exercise of jurisdiction.' " Id. at 327 (emphasis omitted) (quoting Moses H. Cone, 460 U.S. at 16, 103 S.Ct. at 937). But in Bethlehem Contracting, "allowing the federal action to proceed [did] not necessarily create piecemeal litigation." Id. at 328.[1] That case is thus quite distinguishable.
 
 
 10
 Lumbermens' suggestion that the Connecticut action constitutes "the entire controversy" does not detract from the fact that the determination of Raymark's coverage dispute with any particular insurer necessarily impacts upon the timing of the obligations of the other insurers. Lumbermens' policies must be considered as part of an inclusive controversy most appropriately decided in a single forum. Cf. Lumen Construction, Inc. v. Brant Construction Co., 780 F.2d 691, 695-96 (7th Cir.1986) (stay proper where "state court litigation [would] probably eliminate the need for any further proceedings in federal court"); Cannady v. Valentin, 768 F.2d 501, 503 (2d Cir.1985) (per curiam) (affirming stay in action concerning emergency shelter for the homeless in favor of ongoing state proceedings). We agree with Raymark that inconsistent judgments as to the respective obligations of Raymark's excess insurers would make the allocation of indemnity and defense costs and the handling and administration of over 30,000 asbestos-related claims against Raymark absolutely impossible.
 
 
 11
 Moreover, American Home, whose policies immediately underlie Lumbermens', is a party in the Illinois action, and Lumbermens' policies follow the form and specifically incorporate by reference the terms and conditions of the American Home policies. In an insurance coverage dispute such as is here involved, the interest of an insured in binding as many of its insurers as possible to a single adjudication is a factor strongly weighing in favor of maintenance of an inclusive action. See American Motorists Insurance Co. v. Philip Carey Corp., 482 F.Supp. 711 (S.D.N.Y.1980) (federal declaratory judgment action initiated by insurer against insured and two other primary carriers stayed in favor of later-filed state action against fourteen primary and excess carriers).
 
 
 12
 Lumbermens also argues that considerable progress has been made in the Connecticut action, but such progress wholly relates to discovery consisting of the exchange of requested documents and partial answers to interrogatories. No depositions have been taken and numerous discovery disputes remain. In addition, any discovery taken in the Connecticut action can be utilized, concededly without objection from Raymark, in the Illinois action. It is true that Lumbermens recently has filed a motion for partial summary judgment in Connecticut, but the motion has not even been fully briefed. The "considerable progress" that Lumbermens claims is strictly illusory.
 
 
 13
 Finally, Lumbermens argues that Connecticut law may govern its policies, notwithstanding that the policies were issued in New York City, follow the form of policies governed by Illinois law, and cover liabilities of Raymark worldwide. The issue as to which law applies has not been determined nor do we know if Illinois and Connecticut law differ. In any event, state law supplies the rule of decision on the merits and although the presence of state law issues rarely weighs in favor of the surrender of federal jurisdiction, there is nevertheless nothing to indicate that the Illinois state court is incapable of making the appropriate choice of law determination and applying Connecticut law if the court determines that that law governs.
 
 
 14
 The district court was concerned, as we are, that Lumbermens' rights will not be adequately protected in the Illinois action, but issues regarding allocation of costs among Raymark's primary insurers and all issues regarding excess policies have been reserved by the Illinois circuit court judge. The Illinois judge, indeed, has not bound Lumbermens to any interim funding order even though other of Raymark's second-layer excess insurers have been required to provide interim funding. We note further that the Connecticut federal court action was not dismissed but rather was stayed. Thus, if Lumbermens' fears of inadequate treatment in Illinois are realized, Lumbermens can return to the district court, which has retained jurisdiction.
 
 
 15
 For the reasons above stated, we affirm the district court's granting of the stay.
 
 
 
 [1]
 The Bethlehem Contracting court went on to say:
 Although there is similarity of parties, Milstein is named as an individual defendant only in the federal suit, while eleven of the fourteen defendants in state court are unique to that action. And although the disputes in both the state and federal forums stem from the Bank of America Plaza construction project, Bethlehem's federal suit raises a cause of action in tort against Milstein that has no counterpart in the state litigation.
 800 F.2d at 328.