**AMERICAN ALLIANCE INSURANCE COMPANY a/s/o Michael Feidelson, Plaintiff,**

v.

**EAGLE INSURANCE COMPANY, Defendant.**

**No. 96 Civil 3678 (RWS).**

United States District Court, S.D. New York.

April 23, 1997.

Tell, Cheser & Breitbart, L.L.P., New York City, for Plaintiff; Kenneth R. Felt, of counsel.

Rivkin, Radler & Kremer, Uniondale, NY, for Defendant; Evan H. Krinick, Christine M. Metzner, of counsel.

SWEET, District Judge.

Defendant Eagle Insurance Company ("Eagle") has moved to stay or dismiss this action brought by American Alliance Insurance Company ("Alliance"), the subrogee of Michael Feidelson ("Feidelson"). Eagle seeks to have this Court abstain from exer-

cising its jurisdiction under the principles of *Colorado River Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (*"Colorado River"*). For the reasons set forth below, the motion is granted.

### Prior Proceedings

This action was filed on May 18, 1994, seeking to recover on an insurance policy and to enforce a default judgment obtained under somewhat complicated circumstances. After limited discovery, the default judgment was enforced for the reasons set forth in opinions of March 15, 1995 and August 31, 1995. *American Alliance Ins. Co. v. Eagle Ins. Co.,* No. 94 Civ. 3678, 1995 WL 117623 (S.D.N.Y. Mar.15, 1995); *American Alliance Ins. Co. v. Eagle Ins. Co.,* 163 F.R.D. 211 (S.D.N.Y. 1995). The Court of Appeals reversed, enunciating the standard for excusable neglect in an opinion of August 7, 1996. *American Alliance Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57 (2d Cir.1996).

After remand, a discovery schedule and the date for filing the pretrial order was set by an order of October 2, 1996.

The instant motion by Eagle was filed on November 27, 1996, and argued and considered fully submitted on January 15, 1997.

### Facts

This action and three state court actions involve insurance policies which were written to cover losses resulting from a fire which occurred on February 14, 1991 at 537–547 West 26th Street, New York, New York.

As pleaded by Feidelson, the premises were originally leased by Feidelson Transportation Corp. to Air Cargo Expeditors, Inc. ("Air Cargo"). The lease required the tenant to hold the landlord harmless. In 1986, the property and the rights under the lease were transferred to Feidelson. In 1988, Air Cargo and Feidelson executed an agreement to permit Air Cargo to sublet a portion of the premises to Shimoe Brake & Wheel, Inc., d/b/a King Bear, also known as Shimoe Brake & Front End, Inc., d/b/a Bear Automotive Services Centers (collectively, "Shimoe") through 1991. Air Cargo was required to provide Feidelson with a certificate

of general liability insurance and the Shimoe sublease incorporated the terms of the Air Cargo lease.

Lexington Sales, Inc. ("Lexington") and J.S. Trading Corp. ("J.S."), apparel wholesalers, were also tenants at the same premises. M.R.P. Realty managed the premises.

Lexington and J.S. were insured by Continental Insurance Company ("Continental"). Feidelson was insured for fire damage to the building by Alliance which was apparently a wholly-owned subsidiary of Great American Insurance Company ("Great American"), both of which are part of the American Financial Group. Eagle issued a garage liability policy to Shimoe under which Feidelson was additionally insured. DCW Auto Agency, Inc. managed the Eagle policy issued to Shimoe.

After the fire in February 1991, coverage under the insurance policies was invoked, and litigation was commenced in the Supreme Court, New York County by Continental against M.R.P. Realty and Feidelson. *Continental Insurance Company a/s/o Lexington Sales and J.S. Trading v. M.R.P. Realty,* Sup.Ct., N.Y. County, Index No. 15595/91 (the "Continental Action"). Alliance is defending the Continental action on behalf of Feidelson. In its amended complaint, verified September 23, 1991, Continental alleged that the February 1991 fire was electrical in nature and that M.R.P. Realty and Feidelson negligently failed to maintain the electrical system and asserted damages in the amount of $300,147.71.

In January 1993, M.R.P. Realty and Feidelson, as defendants in the Continental Action, commenced a third-party action against Air Cargo and "Shitoe [sic] Brake and Front End, Inc." based upon the lease of the premises to Air Cargo and the sublease to Shimoe.

In July 1995, the parties in the Continental Action deposed Arthur Banks, a New York City Fire Department Fire Marshall who inspected the premises after the fire and a discovery schedule was set.

In July 1996, Eagle's present in-house counsel moved for leave to withdraw as counsel for Shimoe. Shortly thereafter, Air Cargo, as a defendant in the Alliance State Action and a third-party defendant in the Continental Action, cross-moved to consolidate the actions and for a joint trial in order to achieve a complete resolution of the issues in the damages actions without duplicating time, energy and efforts.

By order dated September 24, 1996, the motion to withdraw as counsel for Shimoe was denied and the cross motion was granted to the extent of consolidating the Continental Action and the Alliance State Action for the purposes of discovery. The portion of the cross motion seeking a joint trial was denied without prejudice to renewal upon completion of discovery.

In September 1992, Great American, as the subrogee of Feidelson, had commenced an action against Air Cargo and Shimoe Brake and Front End in the same court alleging that Feidelson sustained property damage in the amount of $45,365. The caption was later amended to change the name of the plaintiff to American Alliance, as subrogee of Feidelson. *American Alliance Insurance Company a/s/o Feidelson v. Air Cargo Expeditors and Shimoe Brake & Front End,* Sup.Ct., N.Y. County, Index No. 27416/92 (the "Alliance State Action").

On September 23, 1993, counsel for Alliance wrote to Eagle advising it of Shimoe's default in the Alliance State Action. By letter dated October 5, 1993, Eagle advised Shimoe that it was disclaiming coverage with respect to Feidelson's claim because the Eagle policy had been cancelled on February 4, 1991. On February 24, 1994, Alliance obtained a default judgment against Eagle in the amount of $322,264, plus $87,011.28 in interest and $200 in costs.

On May 18, 1994, Alliance commenced this action (the "Alliance Federal Action") to enforce the default judgment against Shimoe in the Alliance State Action. Alliance obtained a default judgment against Eagle due to Eagle's failure to answer the complaint. The Second Circuit vacated the default judgment on August 7, 1996. On August 29, 1996, the Second Circuit's mandate returned jurisdiction to this Court. Accordingly, Eagle served its answer to the complaint on September 5, 1996. Eagle's defense is premised

upon the non-existence of coverage due to the cancellation of the policy based upon the nonpayment of premiums.

By summons and complaint dated September 6, 1996, Feidelson commenced a declaratory judgment action in Supreme Court, New York County, against Eagle, Continental as subrogee of Lexington Sales and J.S. Trading, Air Cargo, Shimoe and DCW. *Feidelson v. Eagle Insurance Company, et al.,* Sup.Ct., N.Y. County, Index No. 604641/96 (the "Feidelson State Action").

There are four causes of action in the Feidelson State Action. In the second cause of action, Feidelson seeks a declaration that the Eagle policy covered him for the loss asserted by Continental. The fourth cause of action which is asserted against DCW, related tangentially to Eagle. In the fourth cause of action, Feidelson asserts that if the Eagle policy does not cover him, DCW is liable for allegedly failing to notify him of the cancellation of the policy. The first and third causes of action in the Feidelson State Action are directed to Air Cargo and Shimoe and are based upon alleged provisions of the lease agreements requiring indemnification and the procurement of insurance. Eagle served its answer to Feidelson's complaint on November 13, 1996, containing several affirmative defenses, including the cancellation of the Eagle policy prior to the date of loss.

There are, therefore, three state court actions (or four if the third-party action in the Continental Action is counted)—the Continental Action, the Alliance State Action, and the Feidelson State Action—in addition to this federal action, to enforce the judgment in the Alliance State Action, all implicating the insurance policies involved as a result of the February 1991 fire. The resolution of the Eagle defense of cancellation of the Shimoe policy in this action will bear upon relief in the Continental Action, is central to the third-party claim in that action and to the effect of the judgment in the Alliance State Action, the second cause of action in the Feidelson State Action and, of course, this action.

*Discussion*

■ Generally speaking, "federal courts have a 'virtually unflagging obligation' to ex-

ercise their jurisdiction." *Burnett v. Physician's Online, Inc.,* 99 F.3d 72, 76 (2d Cir. 1996), *quoting Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. However, the district court has the discretion to abstain from exercising jurisdiction over an action where a concurrent state proceeding is pending based upon "considerations of '[w]ise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), *quoting Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952).

"To determine whether *Colorado River* abstention is appropriate, the district court must weigh six factors, with the balance heavily weighted in favor of the exercise of jurisdiction." *Burnett,* 99 F.3d at 76, *quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983). In *Colorado River,* the Supreme Court set forth four factors to be taken into account in deciding whether a federal court may abstain in favor of a parallel state action: (1) the assumption of jurisdiction over any res or property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the concurrent forums obtained jurisdiction. *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246–47. In *Moses H. Cone,* 460 U.S. at 23–26, 103 S.Ct. at 941–42, the Supreme Court added two more factors to the *Colorado River* abstention analysis—(5) the source of the applicable law; and (6) the adequacy of procedures in the state court to protect the federal plaintiff's rights.

■ Notably, "[n]o one factor is necessarily determinative." *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1247. Moreover, "[t]he weight to be given any one factor may vary from case to case, depending on the particular setting of the case." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937. Thus, the *Colorado River* factors cannot be viewed as presenting a mechanical or exhaustive check-

list. The district court is obligated to undertake a careful balancing of the applicable factors, but the decision to abstain is in the sound discretion of the district court. *Arkwright–Boston Mfs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir.1985). As this Court has noted, the federal courts have frequently followed *Colorado River* and abstained from exercising jurisdiction in deference to parallel state actions. *Mann v. Alvarez*, No. 96 Civ. 2641, 1996 WL 535540, at *2 (S.D.N.Y. Sept.20, 1996), *citing Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 815 F.Supp. 127, 131 (S.D.N.Y.1993).

■ This action and the Feidelson State Action are parallel proceedings for purposes of abstention under *Colorado River* in that they involve the same issue of the cancellation of the Eagle policy. Indeed, this action seeks enforcement of the default judgment obtained by Alliance in the Alliance State Action which has been consolidated for purposes of discovery with the Continental Action.

Based on careful assessment of the relevant factors as set forth below, abstention is warranted in this case.

### Whether Either Court has Jurisdiction over Property

Neither this action nor any of the state actions involves jurisdiction over property. Accordingly, this factor is inapplicable and therefore neutral. *Arkwright–Boston*, 762 F.2d at 210–11; *Mann v. Alvarez*, 1996 WL 535540, at *2.

### Whether the Federal Court is Inconvenient

The Feidelson State Action is pending in Supreme Court, New York County. Inasmuch as the Southern District of New York is convenient relative to the state forum, this factor is also neutral. *Arkwright–Boston*, 762 F.2d at 210–11; *Mann v. Alvarez*, 1996 WL 535540, at *2.

### Avoidance of Piecemeal Litigation

The desirability of avoiding piecemeal litigation was the most significant factor favoring abstention in *Colorado River*, 424 U.S. at 818–20, 96 S.Ct. at 1246–48, as it is here. *See also Arkwright–Boston*, 762 F.2d at 211. The concurrent litigation of this action, the

Feidelson State Action and the Alliance State Action would require piecemeal and duplicative litigation of the issues regarding the cancellation of the Eagle policy and Eagle's potential obligations with respect to Shimoe and Feidelson.

The Second Circuit's decision in *Arkwright–Boston* compels the result here. That decision involved a number of state court actions which arose out of a water main break in New York's garment district and two subrogated federal actions to recover sums paid to insureds. The state actions had been consolidated and assigned to one state court justice. The Second Circuit concluded that the danger of piecemeal litigation was the paramount factor favoring abstention. 762 F.2d at 211. As the Court explained:

> If the federal court refuses to abstain, it will force defendants to defend this complex litigation on two fronts. Further, inconsistent disposition of these claims between two concurrent forums would breed additional litigation on assertions of claim and issue preclusion. This could burden the parties for years to come. "[T]he existence of such concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first [which would be] prejudicial, to say the least, to the possibility of reasoned decision making by either forum." *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, [567–68] 103 S.Ct. 3201, 3214, 77 L.Ed.2d 837 (1983). As the suits all arise out of the single water main failure, they should be tried in one forum. Maintaining virtually identical suits in two forums under these circumstances would waste judicial resources and invite duplicative effort. Plainly, avoidance of piecemeal litigation is best served by leaving these suits in the state court.

*Id.*

Although there are fewer parties here than in *Arkwright–Boston* and the issues appear simpler, this action and the related state actions nonetheless similarly arise out of a single event—a fire at the insured premises—and all involve to a greater or lesser degree the same issue of the cancellation of

the Eagle policy. *See also De Cisneros v. Younger,* 871 F.2d 305 (2d Cir.1989) (abstention appropriate considering risk of piecemeal litigation where eight suits relating to same fire underlying federal suit were pending in state court).

In addition, the Feidelson State Action is far more comprehensive than this action. *See DeVona v. City of Providence,* 652 F.Supp. 683, 688 (D.R.I.1987) (abstaining where, among other things, state action was more comprehensive than federal action). For instance, DCW, which administered the Eagle policy issued to Shimoe, is a party to the Feidelson State Action, but not a party to this action. Notably, in this action, Alliance has requested documentation regarding agreements and correspondence between Eagle and DCW and is seeking to depose a former officer of DCW. Alliance has also requested documentation from Eagle's claim file in the Continental Action. *Id.*

Moreover, the Continental Action is a subrogated action seeking damages arising out of the fire at the insured premises. Air Cargo, which leased the premises and which appeared in the Continental Action and the Alliance State Action, also has potentially applicable insurance, the existence of which can be determined in the Feidelson State Action. Feidelson, the plaintiff in the Feidelson State Action, is also being defended in the Continental Action by Alliance or Great American.

In this action, Alliance seeks $409,475.28. Continental seeks $300,147.71 in the Continental Action. The Eagle policy has a $500,000 limit. If it is ultimately determined that the Eagle policy was not properly cancelled, the rights of Feidelson, Alliance, and Continental, as well as any other party that might make a claim against Eagle, to the limited proceeds of the Eagle policy and all other possibly applicable policies, would be most appropriately determined in a single forum.

With respect to the Continental Action, if it is ultimately determined that the Eagle policy covering Shimoe was not appropriately cancelled, the possibility exists that Eagle and Great American or Alliance are co-primary insurers. *See e.g., Lumbermens Mut. Casualty Co. v. Allstate Ins. Co.,* 51 N.Y.2d 651, 655, 435 N.Y.S.2d 953, 417 N.E.2d 66 (1980) ("[W]here there are multiple policies covering the same risk, and each [in its 'other insurance' provision] generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount [sic] of insurance.") Of course, such a determination can only be made in the context of the Feidelson State Action, which involves all the affected parties and all potentially liable insurers. Interests of judicial economy will be best served if all issues regarding the applicability of the various insurance policies are determined in one action.

In *Lumbermens Mutual Casualty Co. v. Connecticut Bank and Trust Co.,* 806 F.2d 411 (2d Cir.1986), a declaratory judgment action had been started in state court regarding insurance coverage for Raymark Industries ("Raymark"), one of its insureds, in connection with asbestos-related suits. 806 F.2d at 413. The defendants in the state action were Raymark's other primary insurers and its excess insurers. *Id.* Lumbermens, one of the excess insurers, commenced a declaratory judgment action against Raymark and others in federal court, but did not join the underlying insurers. *Id.* In upholding the district court's determination to abstain, the Second Circuit noted:

[i]n an insurance coverage dispute such as is here involved, the interest of an insured in binding as many of its insurers as possible to a single adjudication is a factor strongly weighing in favor of maintenance of an inclusive action.

*Id.* at 415; *see also General Reinsurance Corp. v. CIBA–Geigy Corp.,* 853 F.2d 78, 81 (2d Cir.1988) ("as the New Jersey action [seeking a declaration regarding insurance coverage] embraces all the [ ] issues, the risk of piecemeal litigation is real and should be avoided"); *Hoodco, Inc. v. United Capitol Ins. Co.,* 875 F.Supp. 541, 543 (S.D.Ill.1994) ("potential for piecemeal litigation [was] glaring" where insurer sought declaration in state court that policy issued to federal plaintiff was void and federal plaintiff asserted breach of insurance contract in federal action).

*Lumbermens* and *General Reinsurance* applied *Colorado River* abstention in the context of declaratory judgment actions commenced i n federal and state court. In 1995, the Supreme Court held that the discretionary standard set forth in *Brillhart v. Excess Insurance Company of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), not the *Colorado River* test, governs abstention questions with respect to federal declaratory judgment actions. *Wilton v. Seven Falls Company,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Although Lumbermens and General *Reinsurance* would be determined today under *Brillhart,* rather than *Colorado River,* these cases still provide useful guidance with respect to the avoidance of piecemeal litigation factor of the *Colorado River* analysis.

As the Supreme Court explained in *Wilton, Brillhart* abstention involves broader discretion than *Colorado River* abstention. 515 U.S. at ——, 115 S.Ct. at 2142. Notably, however, in setting forth the avoidance of piecemeal litigation factor in *Colorado* River, the Supreme Court cited *Brillhart.* 424 U.S. at 818, 96 S.Ct. at 1246–47. In *Brillhart,* the Supreme Court explained:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

316 U.S. at 495, 62 S.Ct. at 1175–76.

Although this action was not commenced under the Declaratory Judgment Act, Alliance's claim in this action involves essentially the same relief sought in the Feidelson State Action, *i.e.,* a declaration of the rights of the parties under the Eagle policy. Inasmuch as this action is in essence one for declaratory relief, the piecemeal litigation factor becomes an even weightier factor favoring abstention. *Cf., Horne v. Firemen's Retirement Sys. of St. Louis,* 69 F.3d 233 (8th Cir.1995) (applying *Brillhart* abstention where complaint sought declaratory and monetary relief).

Moreover, aside from this abstention motion, there is little Eagle can do to avoid piecemeal and duplicative litigation of the claims relating to the Eagle policy. For example, Eagle could not remove the Feidelson State Action to this court and then attempt to have the actions consolidated, because diversity of citizenship would not exist with respect to the Feidelson State Action. *See* 28 U.S.C. § 1441.

Here, the problem of piecemeal litigation is exacerbated by the risk of inconsistent results because the parties to the suits are not identical and thus not all bound by the judgment of any given court. *See Fischmann v. VisionTel., Inc.,* 934 F.Supp. 115, 118 (S.D.N.Y.1996). For example, it is possible that if Alliance succeeds in this action, the result would have *res judicata* or *collateral estoppel* effect on Eagle in the Feidelson State Action. On the other hand, if Eagle succeeds in this action, it is possible that the favorable judgment would not have preclusive effect on the Feidelson State Action because of the presence of other parties in that action. This possibility of inconsistent and asymmetrical results could cause friction between state and federal courts, another basis for declining jurisdiction. *De Cisneros,* 871 F.2d at 308.

The cases cited by Alliance in opposition to abstention are distinguishable. In *Sacody Technologies v. Avant, Inc.,* 862 F.Supp. 1152 (S.D.N.Y.1994), for example, all relevant parties were parties to the federal action and there was therefore little danger of piecemeal litigation or conflicting outcomes. 862 F.Supp. at 1158. In *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 328 (2d Cir.1986), the federal action involved causes of action that were not raised in the state action. Moreover, no defendant had even answered the complaint in the state action. In *Bank of New York v. Bin Saud,* 628 F.Supp. 474 (S.D.N.Y.1986), the federal and state actions arose out of separate contractual obligations. The federal action arose from a personal guarantee that called for the application of New York law, which the Florida action was a foreclosure proceeding. Here, both this action and the Feidel-

son State Action arise out of the cancellation of the Eagle policy.

In sum, this action and the Feidelson State Action are inextricably intertwined and the avoidance of piecemeal litigation is a decisive factor favoring abstention. *See De Cisneros,* 871 F.2d at 307–08 (avoidance of piecemeal litigation a decisive factor where the state and federal issues are "inextricably linked").

***Order in which Jurisdiction was Obtained***

In evaluating the order in which jurisdiction was obtained, the court does not look only to which action was commenced first, but rather to the relative progress of the actions in the two forums. *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. at 939–40; *De Cisneros,* 871 F.2d at 308 (2d Cir.1989); *Arkwright–Boston,* 762 F.2d at 211.

In this action, Eagle has served its answer, and this Court has held a routine pretrial conference. No depositions have been taken. Eagle has answered the complaint in the Feidelson State Action. Little has been done by way of discovery in the now consolidated Continental and Alliance State Actions. The Continental Action, out of which the Feidelson State Action arises, was commenced long before this action. Thus, the mere fact that this action was commenced prior to the Feidelson State Action does not favor retention of jurisdiction.

Notably, in *De Cisneros,* in which the district court's abstention was affirmed, both the state and federal actions were in their discovery stages and more discovery had occurred in the federal action. 871 F.2d at 308. Indeed, the federal court was closely involved in the discovery process and had determined a summary judgment motion. *Id.* Notwithstanding the fact that the federal action had progressed further than the state action, the Second Circuit accepted the district court's conclusion that "no appreciably greater progress" had been made in the federal action and ruled that this factor favor abstention. *Id.* Thus, under this reasoning, the mere fact that slightly more activity has taken place in this action does not mandate retention of jurisdiction. Moreover, what progress has been made in this action has not been directly related to the merits. The question of Eagle's default, which was the subject of the

two opinions and appeal in this action, does not bear on the cancellation issue that forms the core of the case.

Another consideration related to the order in which jurisdiction is obtained is the identity of the parties bringing the actions. Where the plaintiff is the same in both the federal and state actions, the order in which jurisdiction is obtained is of minimal significance. *See Rosser v. Chrysler Corporation,* 864 F.2d 1299, 1308 (7th Cir.1988) ("The fact that jurisdiction was obtained first in the federal case is not of significance because here the plaintiff is the party who filed both of the suits.").

Alliance or Great American presumably are the real parties in the Feidelson State Action. Indeed, Great American commenced the Alliance State Action that led to this action. The fact that Alliance commenced this action before the Feidelson State Action was commenced is not relevant to *Colorado River* analysis since it was the Alliance State Action which first raised the issue here.

***Source of Law***

This diversity action involves only issues of state law. In *Colorado River,* the Supreme Court noted that the presence of a federal question in a case weighs heavily against abstention. 424 U.S. at 815, n. 21, 96 S.Ct. at 1245, n. 21. Given the absence of a federal question in this action, which involves only state law issues, the source of law factor favors abstention. *See De Cisneros,* 871 F.2d at 309; *Bernstein v. Hosiery Mfg. Corp.,* 850 F.Supp. 176, 185 (E.D.N.Y.1994).

***Adequacy of Procedures in State Court to Protect Federal Plaintiff's Rights***

Little comment on this factor is necessary. Alliance's rights are adequately protected in the Feidelson State Action where it can assert the same claims raised here. *See Arkwright–Boston,* 762 F.2d at 211; *Bernstein,* 850 F.Supp. at 185 (dismissing action where federal plaintiff could assert claims for same relief in New York action).

### Conclusion

In sum, *Colorado River* abstention is appropriate and Eagle's motion to dismiss will be granted. Submit judgment on notice.

**It is so ordered.**